## ANTON GUTTMAN v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 8, 1924.

No. 23,783.

**No evidence of defendant's negligence and directed verdict proper.**
    An examination of the record discloses no negligence on the part of the defendant contributing to plaintiff's injury. The rule of res ipsa loquitur does not apply.

Action in the district court for Ramsey county to recover $10,000 for injuries received while in defendant's employ. The case was tried before Bechhoefer, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Barton & Kamuchey,* for appellant.

*F. G. Dorety, A. L. Janes* and *M. L. Countryman, Jr.,* for respondent.

QUINN, J.

By this action the plaintiff seeks to recover damages for personal injuries which he sustained on May 25, 1922, while in the employ of the defendant as a car repairer at its shops in the city of St. Paul. On motion made at the close of the testimony, the trial court directed a verdict in favor of the defendant. The appeal is from an order denying plaintiff's motion for a new trial.

The sole question raised upon this appeal is whether there is testimony in the record sufficient to warrant an inference of negligence on the part of the defendant, which contributed to plaintiff's injury. It appears that on the day of the accident, plaintiff and a coworker were requested to replace a broken I-beam with a new one, at the rear end of a dining car then upon the repair track. As a part of such work, it was necessary to take down the drawbar at

[1]Reported in 197 N. W. 215.

the end of the car, remove several yoke bolts and the I-beam, then put in a new I-beam and yoke bolts.

At the end of the dining car in question was the usual passageway leading to any car which might be coupled to it. At the rear end of the car was a buffer which moved in and out when the cars were in motion. Over this buffer was a bufferplate, and on top of the bufferplate was a platform plate. Between this platform plate and the end sill of the car was a piece of thick rubber tiling, 3 feet long and 9 inches wide, with a strip of wood an inch thick nailed onto the bottom for the purpose of stiffening it. This tiling covers the timbers at the end of the car to which the I-beam is bolted. The yoke bolt upon which plaintiff was working at the time of his injury was, looking into the car from the rear, on the right hand side of the center of the passageway. The bolt was 18 inches long, had a flat head about $1\frac{1}{4}$ inches in diameter, and extended down through the timbers beneath the tiling so that the head of the bolt was immediately underneath the rubber tiling. Proper care required the removal of the tiling before attempting to remove the bolt.

Across the passageway at the end of the car was a collapsible iron gate, made of transverse slats of quarter-inch iron with a hinge in the center so the gate might be shoved together, when it would be only 7 inches in width. On the edge of the gate were two iron lugs an inch in length which fit into sockets on an iron post at the left of the passageway, looking into the car from the rear. The gate weighed from 40 to 50 pounds. To put it in place it was necessary only to insert the lugs into the sockets on the post, and the weight of the gate held it intact. To remove the same it was necessary to raise it one inch, and then it was loose. This was the standard method of using such gates. When in place the gate was immediately above and extended down to within 2 inches of the rubber tiling. To open the gate for persons going from one car to another, it was merely shoved together toward the post. When together its outer edge was 22 inches from the yoke bolt in question.

Plaintiff was an experienced car repairer. He had been in the employ of the defendant, repairing dining cars and passenger coaches, for 5 years. Prior to that period he had worked in the de-

fendant's coach yards as a coach cleaner for nearly 10 years, and was familiar with the construction and handling of these gates. He testified that he saw the gate before the accident, that it was folded together on the left side of the passageway, and that so far as he could see it appeared to be all right. During the forenoon plaintiff and his coworker took off the drawbar and drove out one of the yokebolts. Between 1 and 2 o'clock in the afternoon, when the 2 men were attempting to remove the second bolt, plaintiff took a sledge hammer and drove the bolt up about 16 inches, when the gate fell, striking him on the foot and causing the injury complained of. He testified that his coworker had loosened the rubber tiling some 4 or 5 inches; that it was over the bolt when he drove it up; that the bolt pushed the rubber out of the way; that when he was driving the bolt out the gate came down and struck his foot causing the injury complained of.

The theory of appellant's right to recover in this action, and of the respondent's negligence rendering it liable, is that it was customary for the coach cleaners to remove the collapsible gates from all coaches and dining cars as they came in the coach yard and before they were sent over to the shop for repairs, and respondent negligently permitted the gate in question to be in an unsafe, loose, insecure and dangerous condition, which fact was unknown to him at the time in question. The decisive question is whether there were any proofs in the case to warrant the submission of the above contention as to respondent's negligence to a jury. We agree with the learned trial court that there was not.

It is true that appellant had nothing to do with the putting on or taking off of the gate, unless it was pushed off by his driving the yoke bolt up against the rubber tiling, and thereby pushing the gate lugs out of the sockets of the post and allowing it to fall upon him. It is undisputed that the gate, as well as the sockets on the post, were examined a very few minutes after the accident and found to be in proper condition and not out of repair. The appellant was in the act of striking the bolt another blow when the gate fell. The testimony is undisputed to the effect that, if the gate were pushed together, the tiling not removed, and the yoke bolt

driven up through the floor of the platform, it would raise the tiling, push the gate up out of its sockets, and allow it to fall. This is evidently just what happened. Appellant was in charge of the work. He saw and knew that the gate had not been removed from the car as he claimed the custom to have been. He must have known that the bolt was interfering with and pushing the tiling up and aside. He testified that the bolt pushed the rubber aside.

We find no proof that the defendant was guilty of any negligence which contributed to the accident. The trial court was right in holding that the accident did not appear to be the result of any negligence on the part of respondent. The rule of res ipsa loquitur does not apply.

Affirmed.